**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| DYSON ONNIE McCRAY, | : | MOTION TO VACATE |
| Movant, | : | 28 U.S.C. § 2255 |
| | : | |
| v. | : | CRIMINAL NO. |
| | : | 1:11-CR-455-ODE-JSA-2 |
| UNITED STATES OF | : | |
| AMERICA, | : | CIVIL ACTION NO. |
| Respondent. | : | 1:16-CV-287-ODE-JSA |

## MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION

Movant Dyson Onnie McCray has filed the instant motion to vacate pursuant to 28 U.S.C. § 2255. (Doc. 217). Movant seeks to challenge the constitutionality of his sentences, which were imposed on November 1, 2012, following a jury trial in the Northern District of Georgia.

I.      Procedural History

On September 27, 2011, Movant and two co-defendants were indicted by a federal grand jury in the Northern District of Georgia and charged with aiding and abetting each other in the robbery of a Wells Fargo bank employee by force and violence and intimidation with a dangerous weapon in violation of 18 U.S.C. §§ 2113(a) and (d) and Section 2, and one count of aiding and abetting each other in knowingly using and carrying firearms during and in relation to a crime of

AO 72A
(Rev.8/82)

violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and (2). (Doc. 1). Following a jury trial from July 17, 2012 through July 20, 2012, during which both of Movant's co-defendants testified against him, Movant was convicted of both counts. (Docs. 138-42). Thereafter, on November 1, 2012, Senior U.S. District Judge Orinda D. Evans sentenced Movant to a total of 186 months of imprisonment to be followed by five years of supervised release. (Doc. 157).

Movant's counsel filed a notice of appeal on November 23, 2012, and raised the following enumerations of error: (1) Movant's Sixth Amendment right to a trial by jury was violated when the district court sentenced him to seven years of imprisonment based on the finding that he brandished a firearm; (2) the district court erred by finding that Movant was an organizer or leader of the offense and imposing a two-level enhancement under U.S.S.G. § 3B1.1(c) for his role in the offense; and (3) Movant's 186 month total sentence is substantially unreasonable. *United States v. McCray*, 563 F. App'x 705 (11th Cir. 2014). On April 18, 2014, the Eleventh Circuit affirmed Movant's convictions and sentences. *Id.* The United States Supreme Court denied Movant's petition for certiorari on January 26, 2015. *McCray v. United States*, __ U.S. __, 135 S. Ct. 1174 (2015).

2

Movant filed the instant *pro se* § 2255 motion in this Court on January 25, 2016, and raises the following grounds for relief:[1]

(1)    the Government engaged in prosecutorial misconduct by leading a witness to identify Movant after the witness stated that he never saw any of the robbers' faces since they wore masks;

(2)    he received ineffective assistance of counsel because counsel failed to:

   (a)    utilize the cell phone records to rebut Movant's co-defendant's testimony that Movant called his co-defendant to pick Movant up from the scene of the crime;

   (b)    challenge the Government's expert witness's testimony that the cell phone towers placed Movant at the scene of the crime; and

   (c)    investigate and present testimony supporting Movant's alibi.

(Doc. 217).

On March 28, 2016, Movant sent a letter to the Court in which he indiated that he no longer was incarcerated at the Federal Medical Center in Lexington,

---

[1] Under the federal "mailbox rule," both a *pro se* federal habeas petition and a § 2255 motion are deemed to be filed on the date they were delivered to prison authorities for mailing (*i.e.*, signed). *See Taylor v. Williams*, 528 F.3d 847, 849 n.3 (11th Cir. 2008); *Rodriguez v. United States*, 279 F. App'x 753, 753 (11th Cir. 2008).

3

Kentucky, and added two more claims to his § 2255 motion (hereinafter, the "amended claims"):

> (3)   Movant received ineffective assistance of counsel because counsel spoke with the probation officer preparing the pre-sentence report ("PSR") without Movant being present; and

> (4)   Judge Evans erred in denying Movant the right to proceed without appointed counsel even though counsel had a conflict of interest.

(Doc. 222).

Following the Government's response [Doc. 228], Movant filed what he styled as a reply on June 27, 2016; however, he appears to raise two more claims (hereinafter, the "reply claims") therein: (1) the Court erred in denying the motion to suppress his statements; and (2) his sentence is void based on the Supreme Court's decision in *Johnson v. United States*, __ U.S. __, 135 S. Ct. 2557 (June 26, 2015).[2]

---

[2] In *Johnson*, the Supreme Court invalidated the residual clause in 18 U.S.C. § 924(e)(2) of the Armed Career Criminal Act ("ACCA") as unconstitutionally vague. The ACCA provides that if a person who is convicted under 18 U.S.C. § 922(g) has three or more previous convictions for a "serious drug offense" or a "violent felony," his prison term is increased from up to ten years of imprisonment (set forth in § 924(a)(2)) to a minimum of fifteen years and a maximum of life. *See* 18 U.S.C. § 924(e)(1). The statute defines a "violent felony" as "burglary, arson, or extortion, or involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another.*" 18 U.S.C. § 924(e)(2)(B)(ii) (emphasis added). It is the words at the end of the definition,

II.     Standard of Review

Congress enacted § 2255, authorizing convicted criminal defendants to file a motion to correct sentences that violate federal law, with the intention that the statute serve as the primary method of collateral attack on federally-imposed sentences. *United States v. Jordan*, 915 F.2d 622, 625 (11th Cir. 1990).  Pursuant to § 2255, individuals sentenced by a federal court can attack the sentence imposed by claiming one of four different grounds: "(1) that the sentence was imposed in violation of the Constitution or laws of the United States; (2) that the court was without jurisdiction to impose such sentence; (3) that the sentence was in excess of the maximum authorized by law; and (4) that the sentence is otherwise subject to collateral attack." *Hill v. United States*, 368 U.S. 424, 426-27 (1962) (internal quotation marks and citations omitted); *see generally United States v. Hayman*, 342 U.S. 205 (1952).

"To obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982).   Movant must establish that the facts surrounding his claim present

---

italicized previously, that are known as the ACCA's residual clause, *Johnson*, 135 S. Ct. at 2555-56, and which the Supreme Court found unconstitutionally vague. *Id.* at 2557, 2263.

"exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." *Bowen v. Johnston*, 306 U.S. 19, 27 (1939).

This Court may deny § 2255 relief without an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; *see Long v. United States*, 883 F.2d 966, 968 (11th Cir. 1989). As discussed below, Movant's § 2255 motion and the record in this case conclusively show that he is not entitled to relief in connection with his claims. Thus, no evidentiary hearing is required.

III.   Analysis

A.   The Amended Claims And Movant's First Reply Claim Are Untimely And Do Not Relate Back To The Original § 2255 Motion.

1.   The Limitation Period Contained In Section 2255

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal prisoners must file a 28 U.S.C. § 2255 motion to vacate within one year of the latest of four specified events:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action;

6

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Because Movant's conviction became final when the Supreme Court denied his petition for certiorari on January 26, 2015, he had one year from that date, or until January 26, 2016, to file his § 2255 motion. *See Partee v. Attorney Gen., Ga.*, 451 F. App'x 856, 858 (11th Cir. 2012) ("The one-year statute of limitations for filing § 2255 motions began to run for Partee on October 18, 2010, when the Supreme Court denied certiorari in his direct appeal, rendering his federal conviction final."); *Washington v. United States*, 243 F.3d 1299, 1300-01 (11th Cir. 2001) (holding that a conviction becomes final for purposes of § 2255 when the Supreme Court denies certiorari). Movant, therefore, timely filed his initial § 2255 motion on January 25, 2016, one day before the one-year limitation period expired.

AO 72A
(Rev.8/82)

2.      <u>The Untimely Amended Claims And The First Reply Claim
Do Not Relate Back to The Original § 2255 Motion.</u>

The one-year limitation period also applies to any new or supplemental claims raised after an original § 2255 motion is filed; therefore, the amended claims Movant added on March 28, 2016, and the first reply claim Movant added on June 27, 2016 – all after the January 26, 2016, deadline – are timely only if they relate back to his original § 2255 motion. *See* Fed. R. Civ. P. 15(c); *Farris v. United States*, 333 F.3d 1211, 1215 (11th Cir. 2003). Any such amended claim relates back if it arises from the same set of operative facts as the claims in the original § 2255 motion. *See* Fed. R. Civ. P. 15(c) (allowing 'an amendment to a pleading [to] relate[] back to the date of the original pleading if it "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out . . . in the original pleading."); *Mayle v. Felix*, 545 U.S. 644, 659 (2005) ("[R]elation back depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims."), *overruled on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562-63 (2007); *United States v. Hames*, 431 F. App'x 846, 847 (11th Cir. 2011) ("Rule 15 can be used in cases where a defendant files a timely § 2255 motion and then later files an amendment or additional

8

motion that relates back to the original § 2255, but would otherwise be untimely."); *Farris*, 333 F.3d at 1215 ("The untimely claim must have arisen from the 'same set of facts' as the timely filed claim, not from separate conduct or a separate occurrence in 'both time and type.'") (quoting *Davenport v. United States*, 217 F.3d 1341, 1344 (11th Cir. 2000)).  In other words, in order to relate back to the original motion, "an untimely claim must have more in common with the timely filed claim than the mere fact that they arose out of the same trial our sentencing proceeding[,]" and "new claims alleging different trial errors [are] not part of the same course of conduct[;]" therefore, these claims do not relate back to the date of the timely filed § 2255 motion.  *Farris*, 333 F.3d at 1215.

Here, Movant's original § 2255 motion set forth three ineffective assistance of counsel claims – that counsel failed to utilize the cell phone records and should have presented an alibi witness – and one claim of prosecutorial misconduct relating to a witness identification.  (Doc.  217).  Movant's amended claim for ineffective assistance of counsel, based on the fact that counsel met with the probation officer preparing the PSR outside of Movant's presence, does not arise from the same facts as the other ineffective assistance claims.  Thus, this new sentencing claim does not relate back to the original trial performance claims

simply because it shares the same legal basis – *i.e.,* ineffective assistance of counsel – as the original claims. *See Mabry v. United States*, 336 F. App'x 961, 963 (11th Cir. 2009) ("The core operative facts of [the new claim] are counsel's plea negotiations with the government and the drafting of the plea agreement. But none of Mabry's original claims have core facts in common with the sentencing-cap claim because all of the original claims revolve around counsel's performance during or after the sentencing and not during the plea negotiations."); *see also Jeffries v. United States*, No. 1:07-CR-311-RWS-LTW, 2013 WL 210848, at *3 (N.D. Ga. Jan. 18, 2015) ("The old and new claims share only the same legal basis – ineffective assistance of counsel in violation of the Sixth Amendment – but that is insufficient under the relation back doctrine."). And Movant raised no claim whatsoever in the original § 2255 motion that relates to his new amended claim that the Court erred in denying his motion to proceed without appointed counsel based on counsel's alleged conflict of interest. Thus, these amended claims are untimely.

Likewise, and pretermitting whether the claim would be procedurally defaulted, Movant's first reply claim that his statement should have been suppressed also has nothing whatsoever in common with the ineffective assistance

10

claims or prosecutorial misconduct claim that he raised in his original § 2255 motion.  Thus, this claim does also does not relate back to the original claims and is untimely.

      B.     <u>Movant's Sentence Is Not Encompassed Within *Johnson*'s Holding.</u>

      In Movant's second reply claim, he argues that this Court should extend the *Johnson* decision to the residual clause of 18 U.S.C. § 924(c) – under which he was sentenced – because the statute's definition of a "crime of violence" contains similar language as the residual clause held unconstitutionally vague in *Johnson*. (Doc. 231 at 22).  As discussed previously herein in footnote 2, *supra*, that part of the residual clause of the ACCA that the Supreme Court found unconstitutionally vague defined a violent felony as a crime that "otherwise involves conduct that presents a serious potential risk of physical injury to another."  *See* 18 U.S.C. § 924(e)(2)(B)(ii).

      Under § 924(c), a crime of violence is defined as an offense that is a felony and:

     (A)    has an element the use, attempted use, or threatened use of physical force against a person or property of another; or

11

(B)    that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3).  The first definition, or § 924(c)(3)(A), is known as the "use of force" clause, whereas § 924(c)(3)(B) is known as the residual clause of this statute.  *In re Colon*, 826 F.3d 1301, 1302 (11th Cir. 2016).  As discussed previously in footnote 2, the Supreme Court in *Johnson* invalidated § 924(e)'s residual clause; however, "the law is unsettled" as to whether the ruling in *Johnson* extends to § 924(c)(3)'s residual clause and the Eleventh Circuit has not decided that question.  *In re Colon*, 826 F.3d at 1304 (quoting *In re Pinder*, 824 F. 3d 977, 978 (11th Cir. 2016)); *see also In re Sams*, __ F.3d __, 2016 WL 3997213, at *3 (11th Cir. July 26, 2016) ("We recently recognized that it is an open question whether *Johnson* applies to the residual clause set out in 18 U.S.C. § 924(c)(3)(B)."); *In re Hines*, 824 F.3d 1334, 1336 (11th Cir. 2016) ("As noted, *Johnson* rendered the residual clause of § 924(e) invalid.  It spoke not at all about the validity of the definition of a crime of violence found in § 924(c)(3)(B).  Further, our Court has not held that *Johnson* invalidates § 924(c)(3)(B).").  Notably, the Supreme Court in *Johnson* did not address § 924(c)(3)(B)'s definition of a crime of violence, and the language in that residual clause is somewhat

12

different than the language found to be unconstitutionally vague in the ACCA. *See In re Hines*, 824 F.3d at 1336 n.3 ("Section 924(c)(3)(B) is similar, but not identical, to the language of the ACCA residual clause invalidated by the Supreme Court in *Johnson*."); *In re Colon*, 826 at 1304 ("[W]e note that *Johnson* did not address the definition for 'crime of violence' under § 924(c)(3), and, as shown above, the ACCA residual clause and the § 924(c)(3)(B) residual clause have somewhat different language.").

As the Eleventh Circuit has concluded, however, this Court need not determine whether *Johnson* applies to § 924(c)(3)(B)'s residual clause because Movant's companion conviction for aiding and abetting armed bank robbery under 18 U.S.C. §§ 2113(a) and (d) and 2 clearly qualifies as a crime of violence under § 924(c)(3)(A)'s "use of force" clause based on the use, attempted use, or threatened use of physical force against a person or property of another. *See In re Sams*, 2016 WL 3992713, at *3-4 (concluding that the movant's companion conviction for bank robbery in violation of § 2113(a), which requires that the defendant take the property of a bank "by force and violence, or by intimidation[,]" qualifies as a crime of violence within the scope of § 924(c)(3)(A)'s use of force clause and thus the movant had not made a *prima facie* showing for relief under

13

*Johnson* pursuant to § 924(c)); *In re Hines*, 824 F.3d at 1337 ("Even were we to extrapolate from the *Johnson* holding a conclusion that § 924(c)(3)(B) was also unconstitutional, it would not help *Hines* because his § 924(c) conviction . . . was explicitly based on his companion . . . conviction for armed bank robbery, in violation of 18 U.S.C. §§ 2113(a) and (d).  And a conviction for armed robbery clearly meets the requirement for an underlying felony offense, set forth in § 924(c)(3)(A), which requires the underlying offense to include as an element, 'the use, attempted use, or threatened use of physical force against the person or property of another.'").  *See also In re Colon*, 826 F.3d 1301, 1405 (finding that aiding and abetting a Hobbs Act robbery conviction qualifies as a crime of violence under the use of force clause in § 924(c)(3)(A) and thus the movant's § 924(c) sentence would be valid even if *Johnson* makes the § 924(c)(3)(B) residual clause unconstitutional).  Finally, because *Johnson* is inapplicable and does not relate back to Movant's ineffective assistance or prosecutorial misconduct claims set forth in the original § 2255 motion, Movant's reply claim based on *Johnson* also is untimely.

14

C.     Movant Has Failed To Demonstrate Ineffective Assistance Of Counsel.

    1.     Ineffective Assistance Of Counsel Standard

The standard for evaluating ineffective assistance of counsel claims was set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Green v. Nelson*, 595 F.3d 1245, 1239 (11th Cir. 2010). "An ineffective assistance claim has two components: A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (citing *Strickland*, 466 U.S. at 687). To establish deficiency, a petitioner is required to establish that "counsel's representation 'fell below an objective standard of reasonableness.'" *Wiggins*, 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688)). To establish prejudice, a petitioner must prove a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Allen v. Secretary, Fla. Dep't of Corr.*, 611 F.3d 740, 750 (11th Cir. 2010). The court may "dispose of [the] ineffectiveness [claim] on either of its two grounds." *Atkins v. Singletary*, 965 F. 2d 952, 959 (11th Cir. 1992); *see Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to

15

address both components of the inquiry if the defendant makes an insufficient showing on one.").

The *Strickland* standard also applies to claims of ineffective assistance of counsel on appeal.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Brooks v. Commissioner, Alabama Dep't of Corr.*, 719 F.3d 1292, 1300 (11th Cir. 2013). To succeed on a claim of ineffective assistance of appellate counsel, as on a claim of ineffective assistance of trial counsel, a petitioner must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.  A petitioner does not have a right to have every possible argument raised on appeal, and it is up to appellate counsel to "'winnow[] out' weaker arguments[.]" *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983); *Hittson v. GDCP Warden*, 759 F.3d 1210, 1263 (11th Cir. 2014). Finally, appellate counsel is not ineffective for failing to raise a frivolous argument on appeal.  *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992).

> 2.   Grounds 2(a) and 2(b).

In Ground 2(a), Movant claims that counsel was ineffective because she failed to utilize the cell phone records available at trial when Movant's co-defendant testified that Movant called him to pick Movant up from the scene of the

16

crime, because, according to Movant, the cell phone records "clearly showed the co-defendant never once answer [sic] any alleged phone calls from Movant." (Doc. 217 at 5). Movant's claim in Ground 2(b) also relates to counselor's failure to utilize the cell phone records – this time to counter the Government's expert witness's testimony that the cell phone towers placed Movant near the scene of the crime because, according to Movant, the cell phone records would prove that the cell towers did not actually place Movant at the scene. (*Id.* at 7). Movant has not demonstrated that counsel was ineffective in connection with the cell phone record evidence.

Indeed, counsel's overall trial strategy was to raise a reasonable doubt that Movant actually committed the crimes: she successfully argued a motion in limine which resulted in redaction of the cell phone tower records so that the exhibits were amended to say "Subscriber McCray" instead of "McCray" – eliminating the direct inference that Movant himself was actually using the phone [Doc. 133; Doc. 180 at 6, 7];[3] throughout the trial, in addition to raising doubts about the cell phone evidence, counsel argued that there was no forensic evidence or eyewitness

---

[3] All documents are referenced according to the attachment number and page numbers given by the Adobe File Reader linked to the Court's case file database ("CM/ECF").

testimony that placed Movant at the scene of the crime, that Movant did not resemble the description of the robbers or the robbers depicted in the surveillance video, and that the cooperation witnesses (*i.e.,* Movant's co-defendants) were not credible [Doc. 180 at 34-35; Doc. 182 at 159, 169; Doc. 183 at 168-75]; and after the Government rested, counsel raised a motion for acquittal under Fed. R. Crim. P. 29, arguing that the Government had failed to prove beyond a reasonable doubt that Movant actually committed the offenses [Doc. 183 at 16-17].  Movant has failed to demonstrate that this strategy and/or counsel's performance was unreasonable.  *See, e.g.,Chandler*, 218 F.3d at 1314 ("counsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken 'might be considered sound trial strategy.'") (citations omitted).  *See also Ward v. United States*, 694 F.2d 654, 664 (11th Cir. 1983) ("The record demonstrates, and the court below found, that Ward's trial counsel competently represented his client both before and during trial, raising objections, examining witnesses, performing legal and factual research, and making various motions on behalf of Ward.  Viewed in its entirety, then, counsel's conduct does not even approach that which this court has labeled ineffective in other cases.").

18

Nor has Movant demonstrated that he was prejudiced by any failure on the part of counsel to utilize the cell phone records as he alleges, as Movant's argument that the cell phone records would prove that his co-defendant never answered any of his calls is clearly belied by the cell phone records themselves, which indicate that there were numerous calls between Movant's cell phone and his co-defendant's cell phone before and immediately after the robbery, most of which were, in fact, answered. (Doc. 146, Attach. 5 at 16-17, Attach. 8 at 72-73; Doc. 182 at 68, 70, 74, 77-78). Not to mention the fact that Movant's co-defendant answered the calls from Movant is consistent with Movant's prior admission to the FBI agent that Movant did, in fact, call his co-defendant to pick him up immediately after the robbery [Doc. 182 at 10-12] and with Movant's co-defendant's testimony that he and Movant talked several times before and after the robbery. (Doc. 182 at 159-60, 162-3, 168). Thus, counsel could not be required to argue something that was plainly contradicted by the record. *See Ladd v. Jones*, 864 F.2d 108, 110 (11th Cir. 1989) ("[S]ince these claims were meritless, it was clearly not ineffective for counsel to pursue them.").

The Court also notes that despite all of the overwhelming evidence to the contrary, during his testimony Movant attempted to counter the expert's testimony

19

that the cell phone towers placed him at the scene of the crime by claiming that his phone was not in his possession when the robbery was committed.  (Doc. 183 at 99, 102-03, 124).  Movant's counsel supported Movant's version of the facts by attacking the phone evidence as well as the credibility and motivation of Movant's co-defendant  [Doc. 182 at 159, 168, 175-93; Doc. 183 at 168-70]; however, the jury simply did not believe Movant's version of the facts.  It is not conceivable how counsel could have utilized the cell phone records or challenged Movant's involvement any differently, or how the outcome would have changed had she done so.   Thus, Movant has failed to prove that but for counsel's alleged unprofessional act or omission, the outcome of the trial would have been different.  Accordingly, Movant is not entitled to relief in connection with Grounds 2(a) and 2(b).

> 3.   <u>Ground 2(c)</u>

Movant claims in Ground 2(c) that counsel was ineffective for failing to investigate and present testimony of Movant's girlfriend which he now claims would have supported his alibi.  First, trial counsel's decision as to whether to call an alibi witness is "quintessential trial strategy."  *Ball v. United States*, 271 F. App'x 880, 884 (11th Cir. 2008).  *See also Sanders v. United States*, 314 F. App'x

20

212, 213 (11th Cir. 2008) ("Whether to present testimonial evidence is a matter of trial strategy, and complaints of uncalled witnesses generally are disfavored."). Thus, courts "ordinarily will not second-guess tactical decisions of counsel in deciding whether to call an alibi witness." *Sanders*, 314 F. App'x at 212. *See also Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (*en banc*) ("Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess."). Movant has not demonstrated that counsel's decision not to present his girlfriend as an alibi witness was anything other than a reasonable, tactical decision.

Nor has Movant demonstrated that his girlfriend's testimony would have changed the outcome of the case. Indeed, during direct examination Movant testified that the night before the robbery his girlfriend was extremely sick and that he took off of work the next day to take care of her. Movant further testified that other than buying her medicine, walking his dogs, going to the mailbox and utilizing the internet center at the gym, he stayed at the house. (Doc. 183 at 94-106). When the Government asked Movant on cross-examination if he ever had provided his girlfriend's contact information to the FBI so she could verify his story, Movant stated that "Well, she can't really verify it. She wasn't able to

21

determine where I was at.  She was sick in and out sleeping.  She can't tell if I was awake or, you know, where I was at." (*Id.* at 118).  By Movant's own testimony, therefore, his girlfriend could not provide him with a reliable alibi, and especially in light of the overwhelming evidence against him, Movant has failed to demonstrate that his girlfriend's testimony would have changed the outcome of the case.  Accordingly, Movant is not entitled to relief in connection with Ground 2(c).

> D.   Ground 1 Is Procedurally Defaulted.

Movant claims in Ground 1 that the Government engaged in prosecutorial misconduct because, according to Movant, the Government "led" an eyewitness to identify Movant as the robber even though the witness had already testified that he had never seen Movant's face because it was covered.  The Government argues that this claim is procedurally barred since Movant never raised the issue on appeal.  The undersigned agrees.

> 1.   The Rules Regarding Procedural Default

The procedural default doctrine reflects the "general rule" that "claims not raised on direct appeal may not be raised on collateral review[.]" *Massaro v. United States*, 538 U.S. 500, 504 (2003); *Magluta v. United States*, __ F. App'x __, 2016 WL 4524462, at *5 (11th Cir. Aug. 30, 2016).  To adequately preserve a

22

claim, a movant must raise it both before the trial court (whether by motion, objection, or otherwise), and also on direct appeal. *Murray v. Carrier*, 477 U.S. 478, 490-92 (1986); *see also McKay v. United States*, 657 F.3d 1190, 1196 (11th Cir. 2011) (stating that in order to avoid a procedural default, "a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding.") (internal quotation marks and citations omitted).  Because Movant never raised this claim of prosecutorial conduct, he is procedurally barred from raising it in this § 2255 motion.

A movant may overcome the procedural default of his claim, however, if he shows both cause for the default as well as actual prejudice suffered as a result of the alleged error. *Black v. United States*, 373 F.3d 1140, 1142 (11th Cir. 2005). "[T]o show cause for a procedural default, [a § 2255 movant] must show that some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [his] own conduct." *Lynn v. United States*, 365 F.3d 1225, 1235 (11th Cir. 2004) (per curiam).  To demonstrate actual prejudice, a § 2255 movant must show that the alleged error "worked to his *actual* and substantial disadvantage, infecting his

23

entire trial with error of constitutional dimensions." *Reece v. United States*, 119 F.3d 1462, 1467 (11th Cir. 1997) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)) (emphasis in original).  Alternatively, a § 2255 movant also may overcome a procedural default if "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Lynn*, 365 F.3d at 1234-35.  To make a credible showing of actual innocence, "a movant 'must show that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt' in light of . . . new evidence of innocence." *McKay*, 657 F.3d at 1196 (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).  "The [actual innocence] gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *McQuiggan v. Perkins*, __ U.S. __, 133 S.Ct. 1924, 1936 (2013) (citing *Schlup*, 513 U.S. at 316).

24

2.   <u>Movant Has Not Demonstrated Cause, Prejudice, Or Actual</u>
<u>Innocence To Overcome The Procedural Default Of Ground 1.</u>

Movant never raised his claim in Ground 1 that the Government engaged in prosecutorial misconduct by leading a witness to identify Movant as one of the robbers when the witness had just testified that he could not identify the robber because the robber was wearing a mask that covered his face. To the degree that this Court could construe Movant's ineffective assistance of counsel claims as Movant's attempt to show cause for the procedural default, as discussed previously herein in Section III.C., he has not demonstrated that counsel was ineffective. Nor can he show that the alleged prosecutorial misconduct worked to his actual disadvantage and infected his entire trial with error of constitutional dimensions.

Quite the contrary, Movant's claim of prosecutorial misconduct is plainly contradicted by the record. This claim is based upon the following exchange between the prosecutor and the former bank manager:

Q:   And who was running after her?

A:   It would be the person sitting to my left.

Q:   Well, did you know - I don't want you to identify anyone. Did
     you see the person's face?

25

> A:     I did not see the face, no.  The person was wearing a hoodie.
>        They were all dressed up in white, and it covered his mouth.

(Doc. 182 at 197).[4]   Thereafter, the Court allowed the prosecutor to use leading

questions to clarify that the witness could *not* identify Movant as one of the

robbers:

> Q:     Mr. Silva, You did not see the face of the person that came in
>        behind Ms. Perez Johns; is that right?
>
> A:     I did not, not a full entire face, no.
>
> Q:     And you never saw – you never learned that person's name for
>        a fact; is that right?
>
> A:     The name of –
>
> Q:     Did you ever do a photo array or I.D. that person at any time
>        during the course of this investigation?
>
> A:     I don't recall, no, I don't think so.
>
> Q:     Okay.  So when you're describing to us the person who came
>        in behind Ms. Johns, you don't know who that was?
>
> A:     No.

---

[4]  Notably, Movant's counsel moved for a mistrial based on this in-court identification, and asked the Court to clarify that the witness was not identifying the man running as Movant.  (Doc. 182 at 198-99).

Q:      And you still don't know to this day who that was?

A:      Correct.

(Doc. 182 at 200).  The Court then interjected to even further clarify that the

witness did not identify Movant as the robber:

The Court:   And is it fair to say that when you were testifying a few
minutes ago, and you said something like that, you
weren't intending to make an identification of the
[movant] in court as the person who committed the
robbery; is that right?

A:      Correct, I was not.

(*Id.* at 200-01).  It is abundantly clear from the record that the prosecutor did not

lead the witness to identify Movant, and when the witness volunteered that

identification the prosecutor specifically told him not to identify anyone and then

cleared up any misconception that such an identification had been made.

Moreover, the eyewitnesses – a bank teller and personal banker – described the

robbers as black males with their faces covered.  (Doc. 180 at 53, 55, 60).  And the

FBI Special Agent testified that "Nobody in the bank could get a clear description

of the robbers' face [sic]."  (Doc. 182 at 30).

Thus, there was no such prosecutorial misconduct to prejudicially affect

Movant's substantial rights.  And, because there was no such prosecutorial

27

misconduct and the identification was clarified, counsel could not have been ineffective for failing to raise a meritless claim on appeal. *See e.g., Ladd*, 864 F.2d at 110; *Mylar v. State of Ala.*, 671 F.2d 1299, 1301 (11th Cir. 1982) ("[A]n attorney's failure to brief meritless points of law will normally not be deemed ineffective assistance."). Thus, Movant has neither shown cause or prejudice to excuse the procedural default of this claim.

To the degree that Movant claims that he is actually innocent,[5] he has provided no new evidence, let alone evidence of innocence "so strong that a court cannot have confidence in the outcome of the trial." *McQuiggan*, 133 S. Ct. at 1936. Movant's conclusory claim of actual innocence is insufficient to overcome the procedural default of this claim. Thus, Ground 1 fails.

IV.   <u>Conclusion</u>

Based on the foregoing reasons, **IT IS HEREBY RECOMMENDED** that Movant Dyson Onnie McCray's motion to vacate sentence [Doc. 217] be **DENIED**.

---

[5] As a reason for not raising this ground for relief on appeal, Movant states that "Counsel in place of Movant only invoked sentencing issues. She never raised any of Actual innocence." (Doc. 217 at 4).

28

V.      Certificate of Appealability

Pursuant to Rule 11 of the Rules Governing § 2255 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."   28 U.S.C. § 2253(c)(2) provides that a certificate of appealability ("COA") may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."   In order for the certification requirement to fulfill its function of weeding out frivolous appeals, a court should not automatically issue a COA; rather, the applicant must prove "something more than the absence of frivolity" or "the existence of mere 'good faith' on his or her part."   *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003) (citations omitted).

Movant need not prove, however, that some jurists would grant the § 2255 motion.  *See id.*  "The question is the debatability of the underlying constitutional claim, not the resolution of that debate."  *See Lamarca v. Secretary, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009) (citing *Miller-El*, 537 U.S. at 325).   In other words, Movant need only demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*

29

*v. McDaniel*, 529 U.S. 473, 484 (2000).   Based on the foregoing discussion, reasonable jurists would not find "debatable or wrong" the undersigned's determinations that:  Movant's amended claims and first reply claim are untimely, his sentencing claim is not encompassed within the *Johnson* decision and thus also is untimely, his first ground for relief is procedurally defaulted, and the remainder of his claims are without merit.   *See Slack*, 529 U.S. at 484.

Accordingly, **IT IS FURTHER RECOMMENDED** that a COA be **DENIED**.

The Clerk is **DIRECTED** to terminate the reference to the undersigned Magistrate Judge.

**IT IS SO RECOMMENDED** this 20th day of September, 2016.

JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)